UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONTERO-ALVAREZ, | No. 1:25-cv-1695 AC |
| Petitioner, | |
| v. | ORDER |
| ALBERRAN, et al., | |
| Respondents. | |

The question before the court is whether to convert the temporary restraining order issued on December 5, 2025, into a preliminary injunction. For the reasons discussed below, the court answers this question in the affirmative.

I.   Factual Background[1]

Petitioner is a native and citizen of Peru who entered the United States in July 2022 seeking asylum. ECF No. 2 (Petition) ¶ 2. Upon arrival, petitioner was briefly detained by federal agents and then released on her own recognizance with a I-220B order of supervision and a copy of a notice to appear for removal proceedings in immigration court on August 18, 2026. Id. ¶¶ 2, 6, 38, 46, 56, 74. In doing so, the government determined that she was not a flight risk or danger to the community. Id. ¶ 2, 46, 56.

---

[1] The factual background is based on the verified petition and reply to respondents' opposition. ECF Nos. 2, 13.

Since then, petitioner has lived in the United States and has filed an application for asylum, which is currently pending; received work authorization; and complied with all of the conditions of her release, including attending ICE and USCIS appointments. Id. ¶¶ 2-4, 7; ECF No. 13 (Petitioner's Reply to Respondents' Opposition) at 2.[2] Additionally, she has no criminal history. ECF No. 2 ¶¶ 20, 48, 57.

On November 19, 2025, when she was unable to attend her ICE check in due to car troubles, she called ISAP to inform them of the situation. Id. ¶¶ 2, 7. They informed her that it was okay and rescheduled her for an ICE appointment on November 21, 2025. Id. ¶ 7.[3] When petitioner appeared for her ICE appointment on November 21, 2025, she was detained. Id. ¶ 5.

II.    Procedural History

On December 1, 2025, petitioner filed a Petition for Writ of Habeas Corpus along with a Motion for Temporary Restraining Order. ECF Nos. 2, 3 (Motion for Temporary Restraining Order).

On December 5, 2025, after respondents failed to file an opposition, the court found that petitioner Montero Alvarez was likely to success on the permits of her procedural due process claim because (1) she had a clear liberty interest in her continued freedom based on her 2022 release on her own recognizance by the government, with an I-220B Order of Supervision and a copy of a Notice to Appeal in immigration court, and she continued release for over three years before her re-detention, ECF No. 7 at 4-5; and (2) the Mathews[4] factors weighed in favor of more

////

---

[2] It appears the petition has a typographical error. The petition states petitioner filed for asylum on August 2, 2025. See ECF No. 2 ¶ 3. The petitioner's reply to respondents' opposition states she filed for asylum on August 2, 2023, not 2025. See ECF No. 13 at 2. Given the otherwise chronological order of the facts in the petition, for present purposes the court accepts August 2, 2023, as the filing date for petitioner's asylum application.

[3] Respondents dispute that petitioner was told her failure to appear to her Immigration and Customs Enforcement (ICE) appointment on November 19, 2025, would not be a violation of her parole. ECF No. 12 at 2. However, because they do not provide any evidence contrary to petitioner's verified facts, the court accepts petitioner's facts.

[4] Mathews v. Eldridge, 424 U.S. 319 (1976) (to determine what process is due under the Fifth Amendment, the court considers three factors: the private interest, the risk of erroneous deprivation, and the government's interest.).

2

procedural protections, id. at 5. The court also found the other three Winter factors[5] weighed in petitioner's favor and issued a restraining order. Id. at 5-7.

Respondents were ordered to immediately release petitioner from their custody. ECF No. 7. They were

> enjoined and restrained from re-arresting or re-detaining petitioner absent compliance with constitutional protections, which include, at a minimum, pre-deprivation notice—describing the change of circumstances necessitating her arrest, and detention, and a timely hearing. At any such hearing, the Government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight, and Petitioner shall be allowed to have her counsel present.

Id. at 7. And they were ordered to show cause on or before December 12, 2025, why the court should not issue a preliminary injunction on the same terms as the temporary restraining order. Id.

On December 12, 2025, instead of filing a response to the order to show cause, respondents filed an opposition to the motion for temporary restraining order. See ECF No. 12. Petitioner filed a reply. ECF No. 13.

III.    Legal Standard

The standard for issuing a temporary restraining order is essentially the same as that for issuing a preliminary injunction. Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001) (stating that the analysis for temporary restraining orders and preliminary injunctions is "substantially identical"). To obtain either form of injunctive relief, the moving party must show: "[(1)] that he is likely to succeed on the merits, [(2)] that he is likely to suffer irreparable harm in the absence of preliminary relief, [(3)] that the balance of equities tips in his favor, and [(4)] that an injunction is in the public interest." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008) (citations omitted). "Likelihood of success on the merits 'is the most

---

[5] Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008) (to obtain preliminary injunctive relief, plaintiff must show (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest.); see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001) (the standards for issuing a temporary restraining order and a preliminary injunction are "substantially similar.").

important' Winter factor." Disney Enters., Inc. v. VidAngel, Inc., 869 F.3d 848, 856 (9th Cir. 2017) (quoting Garcia v. Google, Inc., 786 F.3d 733, 740 (9th Cir. 2015)). However, a party seeking injunctive relief must make a showing on all four prongs of the Winter factors to obtain injunctive relief. All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011).

IV. Discussion

a. Overview

The court construes respondents' opposition to motion for temporary restraining order as a response to the order to show cause. In their response, respondents argue that petitioner's motion should be denied because she is not likely to succeed on the merits because she "is properly categorized as an 'alien seeking admission,'" and "is mandatorily detained during removal proceedings under 8 U.S.C. § 1225(b)(2)(A)." ECF No. 12 at 1, 3. The opposition does not address the other three Winter factors.

In reply, petitioner argues that she is not "an alien seeking admission" as required by § 1225(b)(2) and that her release on conditional parole under § 1226(a) created "'an implicit promise' . . . that her liberty 'will be revoked only if [s]he fails to live up to the parole conditions [of her release]." Id. at 4-5 (quoting Morrissey v. Brewer, 408 U.S. 471, 482 (1972)). She maintains that she did not violate the conditions of her parole and that even if she did, her re-detention under § 1226 was unlawful. See id. at 7-8. She also argues that she is likely to suffer irreparable harm absent an injunction and that the balance of equities and the public interest weigh in her favor. Id. at 8-9.

The central question before the court is whether petitioner is subject to mandatory detention under § 1225(b)(2) or discretionary detention under § 1226. As noted above, respondents argue the former and petitioner argues the latter. Because an opposition to petitioner's motion was not timely filed before the court ruled on the temporary restraining order, the court was not aware of this dispute and therefore did not address it at that time. Given the relevancy of this dispute to the due process analysis, the court begins with this issue before conducting the standard procedural due process analysis.

////

b. <u>Petitioner is Subject to Detention Under 8 U.S.C. § 1226</u>

Respondents argue that because petitioner was a noncitizen "seeking admission" when she entered the United States, her subsequent release and termination of parole under 8 U.S.C. § 1182(d)(5)(A) restored her to the status she had upon entry—that of a noncitizen seeking admission under § 1225(b)(2). ECF No. 12 at 3 ("when parole granted by DHS is terminated, the alien 'shall be restored to the status he or she had at the time of parole.'" (quoting 8 C.F.R. § 212.5(e)(2)(i) (2025)). They argue that because petitioner is a noncitizen "seeking admission," she is subject to mandatory detention under § 1225(b)(2).

There are several flaws with respondents' argument. First, petitioner was released on her own recognizance under § 1226(a), not humanitarian parole under § 1182(d)(5)(A).

Despite mandatory detention under § 1225(b), applicants for admission may be temporarily released on parole "for urgent humanitarian reasons or significant public benefit." Jennings v. Rodriguez, 583 U.S. 281, 287-88 (2018) (citing 8 U.S.C. § 1182(d)(5), 8 C.F.R. §§ 212.5(b), 235.3 (2017)). The "express exception to detention" under 8 U.S.C. § 1182(d)(5) "implies that there are no *other* circumstances under which [noncitizens] detained under § 1225(b) may be released." Id. at 300. In contrast, § 1226(a) provides that "[e]xcept as provided in subsection (c) of this section," the Attorney General "may continue to detain" or "may release" a noncitizen detained under § 1226(a) on "bond" or "conditional parole." 8 U.S.C. § 1226(a).

The Ninth Circuit, the Board of Immigration Appeals (BIA), and other district courts have found that "release on recognizance" is the same as "conditional parole" under § 1226(a) and different from parole under § 1182(d)(5). See Ortega v. Gonzales, 501 F. 3d 1111, 1120 (9th Cir. 2007) (finding that Ortega-Cervantes was released on conditional parole under § 1226(a) because "release on recognizance" is another name for "conditional parole under § 1226(a)); Rivera Esperanza v. Francis, No. 25-CV-8727, 2025 WL 3513983, at * 5 (S.D.N.Y. Dec. 8, 2025) (finding petitioner was released on conditional parole under § 1226(a) because he was released on his own recognizance which is a type of conditional parole only available under § 1226(a)); Matter of Olty Cabrera-Fernandez, 28 I. & N. Dec. 747, 749 (B.I.A. 2023) (a noncitizen released on his own recognizance is the same as release on conditional parole under § 236(a)(2)(B) of the

5

INA, codified at 8 U.S.C. § 1226(a)(2)(B)" and "legally distinct from release on humanitarian parole under § 212(d)(5)(A), codified at 8 U.S.C. § 1182(d)(5)(A)."). Here, petitioner's verified filings assert that petitioner was released on her own recognizance. ECF No. 2 at 2, 8-10, 12-13; ECF No. 3 at 3. Respondents do not contest this. ECF No. 12 at 2. Instead, respondents assert, without evidence, that petitioner was released under § 1182(d)(5)(A) and that her parole under § 1182(d)(5) was terminated. Because respondents provide no evidence in support of their contrary assertion, the court finds petitioner was released under § 1226(a), not § 1182(d)(5)(A).[6]

     Second, the court joins several judges in this district and other district courts in finding that the governing detention statute after a noncitizen, like petitioner, has been released from custody under § 1226(a) is and continues to be § 1226, not § 1225, during their removal proceedings. See Gomez Villela v. Robbins, No. 1:25-cv-1393 KES SKO, 2025 WL 3648362, at *4 (E.D. Cal. Dec. 17, 2025) (rejecting the government's argument that petitioner was subject to § 1225(b) where petitioner was *not* paroled pursuant to "the only mechanism by which '[noncitizens] detained under § 1225(b) may be released." (quoting Jennings, 583 U.S. at 300)); BILAL A. v. Wofford, No. 1:25-cv-1715 KES HBK (HC), 2025 WL 3648366, at *3 (E.D. Cal. Dec. 16, 2025) (where the "records establish that petitioner was released 'in accordance with' 8 U.S.C. § 1226 . . . 8 U.S.C. § 1225(b)(1) cannot be applied"); C.A.R.V. v. Wofford, No. 1:25-cv-1395 JLT SKO, 2025 WL 3059549, at *8 (E.D. Cal. Nov. 3, 2025) ("The government's recent interpretation of the relationship between § 1225 and § 1226 is unfounded and detention is therefore not 'mandatory' in this case, where petitioner has been present in the United States for approximately four years and was released on his own recognizance well before Respondents adopted the new interpretation of the governing statutes."); Jimenez v. FCI Berlin Warden, __ F.Supp.3d __, 2025 WL 2639390 (D.N.H. Sept. 8, 2025) (rejecting the government's argument that Jimenez was presently confined under § 1225(b) where he had been "released from custody under § 1225(b)(1) in August 2023 pursuant to a grant of conditional parole under § 1226 and

---

[6] Although this alone defeats respondents' argument, the court addresses the other deficiencies with respondents' argument.

subsequently arrested on a § 1226 warrant nearly two years later.").[7]

Lastly, the court joins a vast majority of district courts across the country in finding that even if a noncitizen entered the country unlawfully, a noncitizen who is *living* in the United States is not a noncitizen "seeking admission" under § 1225(b)(2).

> By a recent count, the central issue in this case—the administration's new position that *all* noncitizens who came into the United States illegally, but since have been living in the United States, *must be detained* until their removal proceedings are completed—has been challenged in at least 362 cases in federal district courts. The challengers have prevailed, either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States.

Barco Mercado v. Francis, No. 25-cv-6582 LAK, __ F. Supp. 3d __, 2025 WL 3295903, at *4 & App'x A (S.D.N.Y. Nov. 26, 2025) (collecting cases); Contreras-Cervantes v. Raycraft, No. 2:25-cv-13073, 2025 WL 2952796, at *8 & n.4 (E.D. Mich. Oct. 17, 2025) ("There can be no genuine dispute that Section 1226(a), and not Section 1225(b)(2)(A), applies to a noncitizen who has resided in this country, irrespective of the length of time, having been apprehended and arrested within the border of the United States. The reading of the statutes supports this finding, as does every other Court that has had to address the distinction between Section 1225(b)(2)(A) and Section 1226(a).") (collecting cases). "These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [petitioner], living in the interior of the country." Salcedo Aceros, 2025 WL 2637503, at *8 (collecting cases); see also Lepe v. Andrews, No. 1:25-cv-1163 KES SKO, __ F. Supp. 3d __, 2025 WL 2716910, at *4

---

[7] This is true even if petitioner was at one point in expedited removal proceedings and subsequently released. See Souza v. Robbins, No. 1:25-cv-1597-DJC-JDP, 2025 WL 3263897, at *3 (E.D. Cal. Nov. 23, 2025) (the court agreed petitioner was subject to § 1226(a) because, although she "initially receive a Notice and Order of Expedited Removal pursuant to § 1225(b)(1), she was subsequently released from detention . . . pursuant to Section 1226); cf. Rodriguez-Acurio v. Almodovar, No. 2:25-cv-6065 (NJC), __ F.Supp.3d __, 2025 WL 3314420 (E.D.N.Y. Nov. 28, 2025) (finding that § 1225(b)(1) did not apply despite petitioner's initial detention at the border because "when ICE affirmatively choses to release an individual on parole, it has made the determination that it no longer intends to fast-track their removal" (quoting Aviles-Mena, No. 25-cv-6783, 2025 WL 2578215, at *5 (N.D. Cal. Sept. 5, 2025)).

7

(E.D. Cal. Sept. 23, 2025) ("The government's proposed interpretation of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice.") (collecting cases).

Here, petitioner has been living in the United States for three years. Accordingly, she cannot properly be categorized as a noncitizen "seeking admission."

### c. Petitioner Has Established a Preliminary Injunction Is Warranted

Having determined that § 1226 applies, the court now looks to whether petitioner's right to procedural due process was likely violated, and whether petitioner has sufficiently shown the other three Winter factors weigh in favor of granting preliminary injunctive relief.

#### i. Likelihood of Success on the Merits

Freedom from detention "lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. "[E]ven when an initial decision to detain or release an individual is discretionary, the government's subsequent release of the individual from custody creates 'an implicit promise' that the individual's liberty will be revoked only if they fail to abide by the conditions of their release." Calderon v. Kaiser, No. 25-cv-6695 AMO, 2025 WL 2430609, at *2 (N.D. Cal. Aug. 22, 2025) (citing Morrissey v. Brewer, 408 U.S. 471, 482 (1972)). "[T]he fact that a decision-making process involves discretion does not prevent an individual from having a protectable liberty interest." Ortega v. Bonnar, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019). Moreover, several courts have explicitly discussed the discretionary nature of revocation of parole under § 1226, and held that despite such discretion, changed circumstances are necessary in order to revoke parole under § 1226. See Salcedo Aceros, 2025 WL 2637503, at *1 ("DHS may not re-arrest" a noncitizen paroled under § 1226(a), even if revoking parole under § 1226(b), "absent a change in circumstances." (citing Panosyan v. Mayorkas, 854 F. App'x 787, 788 (9th Cir. 2021))); see also Kerry-Juma v. Noem, No. SAG-25-04000, 2025 WL 3537525, at *2 (D. Md. Dec. 10, 2025) (citing Luna Sanchez v. Bondi, Civ. No. 25-cv-018888 MSN IDD, 2025 WL 3191922 (E.D. Va. Nov. 14, 2025)); J.C.E.P. v. Wofford, No.

8

1  1:25-cv-1559 EFB, 2025 WL 3268273, at *5 (E.D. Cal. Nov. 24, 2025); Saravia v. Sessions, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017) (where the decision to release a noncitizen under § 1226(a) is made by a DHS officer, not an immigration judge, the government's practice has been to require a showing of changed circumstances before re-arrest), aff'd sub nom., Saravia for A.H. v. Sessions, 905 F.3d 1137 (9th Cir. 2018).

As discussed above, petitioner was released on conditional parole under § 1226(a). Since then, she has been compliant with the conditions of her parole. Although the court did not address the § 1225 versus § 1226 dispute in granting the temporary restraining order in this action, the court relied on the same facts in finding that petitioner had a liberty interest: "Petitioner was released on her own recognizance by the Government in 2022," and "[s]ince that time, she remained out of custody, without incident." ECF No. 7 at 4-5. Accordingly, the court reaches the same conclusion here—petitioner has a liberty interest in her continued release.

Having determined that a liberty interest exists, the court must now examine what process is due. See Ky. Dep't of Corrs. v. Thompson, 490 U.S. 454, 460 (1989) (the court "first asks whether there exists a liberty or property interest which has been interfered with" and then "examines whether the procedures attendant upon that deprivation were constitutionally sufficient").

To determine what process is due, the court considers three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews v. Eldridge, 424 U.S. 319, 335 (1976). Due process rights in the immigration context "must account for the government's countervailing interests in immigration enforcement." Rodriguez Diaz, 53 F.4th at 1206.

With respect to the first factor, petitioner has a strong private interest in remaining free from detention. As discussed above, she was released on her own recognizance because she did

not pose a risk of danger or flight. She has complied with the conditions of her release, has no criminal history, and had been released in the community for three years before she was re-detained. This factor therefore weighs in petitioner's favor.

The second factor, the risk of erroneous deprivation, also weighs in petitioner's favor. Considering that petitioner has been provided no process, the risk of erroneous deprivation is high, particularly in light of the fact that respondents do not argue or present any evidence that petitioner presents a danger to the community or a flight risk. See A.E. v. Andrews, No. 25-cv-0107 KES SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025) ("The risk of an erroneous deprivation [a petitioner's] interest is high where [h]e has not received any bond or custody redetermination hearing[.]" (alterations in original) (citation and internal quotation marks omitted)); R.D.T.M. v. Wofford, No. 1:25-cv-01141 KES SKO, 2025 WL 2617255, at *6 (E.D. Cal. Sept 9, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community." (alteration in original) (citations omitted)).

Finally, while the government has an interest in enforcing its immigration laws, "its interest in detaining petitioner without a hearing is 'low' and custody hearings in immigration court "are routine and impose a 'minimal' cost." R.T.D.M., 2025 WL 2617255, at *6 (citing Ortega, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)).

For these reasons, the court finds that the government's interest in detaining petitioner without a hearing is low and does not outweigh petitioner's substantial liberty interest or the high risk of erroneous deprivation of liberty. Therefore, the court finds that petitioner has established a likelihood of success on the merits of her due process claim.

### ii. Irreparable Harm

"[U]nlawful detention certainly constitutes 'extreme or very serious' damage, and that damage is not compensable in damages." Hernandez v. Sessions, 872 F.3d 976, 999 (9th Cir. 2017). Moreover, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting Elrod v. Burns, 427 U.S. 347, 373 (1979)). "When an alleged deprivation of

a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." Warsoldier v. Woodford, 418 F.3d 989, 1001-02 (9th Cir. 2005) (quoting 11A Wright & Miller's Federal Practice & Procedure § 2948.1 (2d ed. 2004); Arevalo v. Hennessy, 882 F.3d 763, 767 (9th Cir. 2018) ("Deprivation of physical liberty by detention constitutes irreparable harm." (citation omitted)).  This factor therefore weighs in petitioner's favor.

### iii. Balance of the Equities and Public Interest

Finally, "[w]hen the government is a party, the last two factors (equities and public interest) merge." E. Bay Sanctuary Covenant v. Biden, 993 F.3d 640, 668 (9th Cir. 2021) (citing Nken v. Holder, 556 U.S. 418, 435 (2009)).  As addressed above, petitioner is likely to success in proving that respondents have violated federal laws and deprived her of her constitutional rights. "[The government] cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required to avoid constitutional concerns." Rodriguez v. Robbins, 715 F.3d 1127, 1145 (9th Cir. 2013); Zepeda v. U.S. Immigr. & Naturalization Serv., 753 F.2d 719, 727 (9th Cir. 1983) ("[T]he INS cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations.").

For the foregoing reasons, the court will grant a preliminary injunction on the same terms as the temporary restraining order.

### V. Conclusion

Accordingly, IT IS HEREBY ORDERED that:

1. A preliminary injunction shall issue on the same terms as set forth in the temporary restraining order (ECF No. 7).

2. Having released petitioner as required by the temporary restraining order, respondents shall not impose any additional restrictions on petitioner unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing.

3. Respondents are ENJOINED and RESTRAINED from re-arresting or re-detaining petitioner absent compliance with constitutional protections, which include, at a minimum, pre-deprivation notice — describing the change of circumstances necessitating her arrest, and detention, and a timely hearing.  At any such hearing, the Government shall bear the burden of

establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight, and Petitioner shall be allowed to have her counsel present.

4. This order shall remain in effect until the resolution of this action or until otherwise ordered by the court.

5. The parties are directed to meet and confer within seven days from the service of this order for the purpose of submitting a joint proposed briefing schedule for the petition in this case.

6. The parties shall submit a joint proposed briefing schedule to the court no later than ten days from the date of this order.

DATED: December 29, 2025

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE